EDWIN S. DORSEY, BY DANIEL D. DORSEY, HIS NEXT
FRIEND, PLAINTIFF IN ERROR, V. CYRUS R. CLAPP,
DEFENDANT IN ERROR.

1. **Malicious Prosecution:** DEFENSE: EVIDENCE. In an action for malicious prosecution it was claimed by the defendant, who was a constable, that he had sufficient cause for making the complaint against plaintiff, charging him with the crime of burglary, his information being the confession of a youth whom he had previously arrested for the same crime, and which confession was voluntarily given, and by which he implicated plaintiff as being a confederate and accomplice; these facts being testified to by defendant. On his cross-examination he was asked if prior to the confession, and while the youth was in custody, he did not, in the hearing of the party under arrest, tell another constable to take him to jail and by the time he had laid there long enough he would confess, or language to that effect. Objection was made, and the objection sustained. *Held,* Error.

2. **Evidence:** THE GENERAL REPUTATION of a party to an action cannot be established by the proof of specific acts.

ERROR to the district court for Buffalo county. Tried below before MORRIS, J., sitting for HAMER, J.

*Calkins & Pratt,* for plaintiff in error, cited: Stephen's Evidence, Art. 56. 1 Greenleaf Ev., Sec. 55. 1 Best Ev., Sec. 261.

*E. M. Cunningham,* for defendant in error.

REESE, J.

This action was instituted in the district court of Buffalo county. The petition contained two causes of action. The first, for false imprisonment; the second, malicious prosecution.

The allegations of the second count in the petition are, in substance, that on the 8th day of October, 1884, de-

fendant falsely and maliciously and without reasonable or probable cause therefor, charged this plaintiff before a justice of the peace of Buffalo county, with having, on or about the 8th day of October, 1884, in the county aforesaid, committed an offense of burglary and larceny, and thereupon caused the issuing of a warrant and arrest of the plaintiff; that such proceedings were thereafter had as resulted in an acquittal and discharge of plaintiff, and the prosecution was ended. The usual allegations of injury and damage and demand for judgment follow.

The defendant, in his answer, in substance admitted the arrest and conclusion of the prosecution, but alleged that at the time of the arrest he was a constable in the town of Kearney, Buffalo county, and that there was a burglary committed on the night of the 7th day of October, 1884, and on the 8th day of the same month, on due investigation, the defendant, with one Kavanaugh, was led to apprehend one Frank Dayton on the charge of committing said crime, and that Dayton, without any coercion or favor or promise of any reward whatever, made to the defendant and Kavanaugh a confession, wherein he said that he, in company with the plaintiff herein and one Jacob Cornelius, had broken into the store building at the time and in the manner charged. It is further alleged that the defendant submitted the facts stated by Dayton, impartially, fully, and freely to a respectable attorney, who advised defendant that the facts constituted sufficient cause for the arrest of plaintiff. It is denied that the complaint was made falsely, maliciously, and without probable cause.

The reply consisted of a denial of the allegations of new matter contained in the answer.

The trial was had, resulting in a verdict and judgment in favor of defendant. Plaintiff prosecutes error to this court.

Upon the trial plaintiff offered in evidence transcripts from a justice of the peace and county judge, showing that

a complaint had been made before a justice of the peace on the date alleged, charging the plaintiff with the crime of burglary and larceny ; that he was arrested on said charge and detained in custody until the 10th day of said month, at which time the case was dismissed at the request of the prosecution, and plaintiff was discharged from custody.

Plaintiff also called as a witness his father, Daniel A. Dorsey, who testified as to the amount of money expended in procuring a discharge of plaintiff in error, and that previous to the filing of the complaint, plaintiff was employed in a store. Since such time he had been unable to again obtain employment. He also testified that upon the night of the alleged burglary plaintiff was at home, and that he had so informed defendant before defendant made the complaint.

Plaintiff was also called as a witness, and testified to the arrest and detention.

Plaintiff having rested his case, defendant was called as a witness in his own behalf. He testified, substantially, that on the 8th day of October, 1884, he was the constable, and that on that morning he received information that a burglary had been committed, and he, in connection with Mr. Kavanaugh, began an investigation of the matter ; that in the afternoon he arrested one Frank Dayton, charging him with the crime, basing his arrest upon a pair of pants, supposed to be his, found in the store in which the burglary had occurred ; that Dayton claimed the pants, which was a pair of overalls, and acknowledged his guilt, and stated that plaintiff and one Cornelius were with him and were parties in the crime. Upon his cross-examination he admitted that he saw the father of plaintiff before he made the complaint. The question was then asked him, " Did he not ask you not to go any further until he could prove to you that his son had nothing to do with it ?" This question was objected to as immaterial and

improper, and the objection was sustained by the court, to which plaintiff excepted.

We do not conceive the ruling of the court upon this question to have been a matter of very grave importance, as cases might arise in which an officer would not be justified in waiting to be advised that the person suspected was innocent, for fear of an escape. It is vaguely shown by the testimony that at that time he had plaintiff in custody. If this was true the question was a very proper one, as tending to show the animus of the officer's action. There was no danger of an escape, and if by making reasonable inquiry he could satisfy himself that there was no cause for the complaint, it would have been entirely proper for him to do so, and avoid the stain upon plaintiff's reputation caused by the filing of the complaint and prosecution thereunder.

The following question was then propounded to defendant: "Did you not, while the Dayton boy was still insisting he was innocent, say to Kavanaugh, in the boy's presence, 'Take him to jail, and by the time he has lain there long enough he will tell, I guess,' or something to that effect?" This question was objected to by defendant as immaterial, irrelevant, and incompetent, and the objection was sustained. In this we think the court erred. The question was material; it was relevant and competent. Defendant, by his answer, alleged that the confession was made without any coercion on his part. Dayton was a mere boy, and if the alleged confession was extorted from him by a threat to take him to jail and leave him there until he would confess, such threat would tend materially to disprove that such confession was voluntary, and would naturally require further investigation, where, by the confession, he implicated others. It was further shown by the transcript of the proceedings before the county judge that Dayton was acquitted upon his preliminary hearing, the finding being that there was not probable cause to believe

him guilty of the offense. He was therefore discharged. If Dayton was not guilty, his alleged confession, if made, was false. If false, it became material to ascertain in what manner it was obtained, not for the purpose of ascertaining whether his arrest was proper, but for the purpose of ascertaining the character of the information upon which defendant acted in making the charge against the plaintiff.

One Ren Julian was called as a witness, who testified that he had resided in Kearney for twelve years, and had known plaintiff since he was a very small boy. Certain questions were propounded to him, which with their answers we here copy:

Q. You may tell the jury at what hour of the day or night previous to the 8th day of October, 1884, you have seen Edwin S. Dorsey on the street, and in what company.

A. I have seen him at all hours of the day, and at all hours up to eleven o'clock at night.

Q. What was he doing as late as eleven o'clock at night, and what company was he in?

A. He was standing around the rink doors, in company with other boys.

Q. Was he saying anything?

A. He seemed to be the loudest-mouthed boy in the crowd. I have heard him swear louder and farther than any boy in town.

A Mr. McBirney testified to substantially the same thing.

These questions and answers were all objected to by plaintiff as immaterial, irrelevant, improper, and not about any issue in the pleadings, and attacking the witness for particular transactions, but not as to his general reputation. The objections were overruled and the witness testified as above shown.

Without discussing the question as to whether defendant might have introduced evidence against the plaintiff's general character, it is clear that he was not entitled to give in

evidence particular acts.  It is well settled that character cannot be proven in this way.  The general reputation of a party to an action may sometimes be investigated, and in this case, if proper at all, it would have been for the purpose of showing the good faith of defendant in making the complaint.  General reputation when thus placed in issue may be supported by the party thus attacked by calling witnesses to prove the contrary of the statements of witnesses by which his reputation is attacked.  It would be quite difficult to see what proof could have been made to rebut the impression created upon the minds of the jury by this testimony.  It was said that he was seen at the rink with other boys.  This might be true, and yet afford no proof of his bad reputation in connection with the violation of law.  It is said also that he was profane—swearing louder than other boys.  This might also be true, and yet be no proof of a disposition to violate the law by burglarizing other people's property.  It is insisted by defendant that the testimony of this witness "would not weigh very much with the jury in a trial in this action, for it was not of a very material nature," and any prejudice it might have caused in the minds of the jury by its admission, was very materially reduced, if not wholly obliterated, by the refusal of the court to give to the jury the eighth instruction asked by defendant, and must therefore be a very feeble ground for the reversal of a judgment of this character and importance.  The instruction referred was to the effect that if plaintiff, by his own action by keeping late hours and bad company, brought himself into bad repute and public scandal and infamy and disgrace, that would be a very material fact, which must reduce the amount of damages, if any were allowed to plaintiff.  It may be first answered that the testimony was prejudicial, and no doubt it was an important factor, made use of by the jury in arriving at their verdict; and second, that it was admitted at the bar of this court that the attention of

the jury was not called to the instructions named or to the refusal of the court to give it. It is quite clear, therefore, that the action of the court in refusing the instruction could have no effect whatever in repairing the injury done by the admission of the testimony.

For these errors the judgment of the district court must be reversed and the cause remanded for further proceedings, which is done.

REVERSED AND REMANDED.

THE other judges concur.